Case 16-2060 Livingston Christian Schools v. Genoa Charter Township Argument not to exceed 15 minutes per side. Mr. Kelner you may proceed for the abelic. Thank you may it please the court I'm Robert Kelner with Covington and Burling for Livingston Christian Schools. I'd like to respectfully request three minutes for rebuttal time if I may. Livingston Christian Schools is the only accredited K through 12 religious school in Livingston County. Its mission under its Articles of Incorporation is to provide religious education in Livingston County specifically. The denial by Genoa Township of the special use permit that Livingston Christian Schools requested here and needed in order to move into a permanent home in Brighton which was more centrally located, more populous, was not a mere convenience to Livingston Christian Schools. Quite distinct from the situation of the church in this court's living water case. This was far more than a mere convenience. For Livingston Christian Schools the record shows this actually poses a threat to whether this school is viable, whether the school survives. This is not about whether LCS can add space as in living water. It's about whether it can function at all in serving its original mission to Livingston County. I couldn't have stated Pickney. Pickney was a school that had proved not viable which is why Livingston Christian Schools was leaving in the first place. There's record evidence your honor of that, ample record evidence that the school board of Livingston Christian Schools had determined there weren't enough students coming in to that area. It was too far from where the bulk of the students were coming from in Brighton. It was too far from the commuter routes. There was a significant drop-off in enrollment that was causing major fiscal problems. This is all in the record. Did the client ever produce in the record any financial statements? I don't believe there are financial statements. Did they ever produce any record of the past five years, ten years or whatever of student enrollment? No, there's declaration testimony from the treasurer of the school as well as from the principal of the school regarding that. There are statements but I mean I'm asking if there's sort of hard evidence you know financial, documentary, statistical stuff. I don't believe at this stage of the in the record. There is however, there is declaration testimony and in addition to that there's deposition testimony from the principal or the president of the school that currently resides at Pinckney which was originally itself a private school and which had to shift into being a public charter school in order to be at that location and the president of that school called Latwa which currently is housed at Pinckney was deposed on that point. That evidence is in the record and I think it's actually some of the more compelling evidence in the record that this is just not a viable private school location. It wasn't We don't know much about the background of this, what is it called, Latwa? Light of the World Academy. That's right. Where is your school currently located? They are currently in a nearby county at the Whitmore location where they have a second year there. That's correct, your honor. Of that county? That's correct. They take it back but so far they're happy to let your client stay there, is that right? So far that's the case but because it is a year-to-year lease and because the school that owns it has the right to reoccupy it at any time, it's led to a drop-off in attendance at Livingston Christian Schools. This is quite far as I understand it from where the bulk of the commute and so they're in a situation where it's very difficult to market. Has LCS sought to negotiate something longer than the year-to-year lease, for example a three-year lease? Has that happened? My understanding, your honor, is that they have, I don't believe this is in the record, but they have made attempts to stay at that location. The problem is that even if they could, it really is not going to be a viable location for this school. It will mean the end of the school because they can't attract, the bulk of the students are coming from the Brighton area. In fact, quite a few students are at the Nazarene Church itself where they would be moving to and so to stay in this location where their enrollment has been dropping off, even if they could work out a longer-term lease, really is not viewed as a solution by the school. The expectations the school would cease to function at some point. We can't be specific as to when. And your honors, I'd like to highlight this case. Yes, Judge. Planning Commission issued an opinion in your favor, is that right? Correct. And then the board of the town, which is made up of how many members voting? It was a 5 to 2 vote, 3 to 2. 3 to 2. Now, what's the basis for the 3 to vote exactly? Right. Well, what this sounds like is, you know, a small-town dispute between people that who are elected, I take it. Yes. And why isn't that, why should we not say, well, this is just a small-town dispute and there's no quote substantial burden problem here and so on. I don't quite get why the board voted as it did. What is the essence of the real problem here? Right. Well, initially they didn't give an explanation at all and they later went back and re-voted and then issued an explanation. The explanation highlighted traffic issues, which is not really plausible because the experts... They actually re-voted. They didn't just go and provide the justification for the vote? There was a second vote, Your Honor, and that's in the record. And they highlighted traffic issues, which is really not credible because various expert consultants had looked at the traffic issues, had concluded that they were manageable with certain conditions. That was the basis of which... It wasn't just that. I think also wasn't there evidence and complaints from the neighbors that the church, under its own prior special use permits, had not complied. I mean, there was too much late night stuff, noise. The church had a bad record. Wasn't there a skateboard park as part of the grounds and the teenagers were out there all at night yelling and screaming and bothering the neighbors? So there's more than just traffic. Apparently, Judge Gilman, there is a skateboard park and there were various complaints that were made. The actual explanation tends to focus more on things like traffic, but you're right that that was one of the issues they were considering. But those issues have been considered by the Planning Commission as well. And nonetheless, the Assistant Township Manager recommended approval of the special use permit. The Planning Commission recommended approval of the special use permit. And under RLUIPA, the statute that's at issue here, it's really getting at whether there are hints that the local process, maybe in a school town, is being twisted or skewed in some way, possibly, by religious animus or animus of secular groups relative to religious groups. I don't understand. The question for us seems entirely standardless. I mean, there aren't any standards. We're just supposed to make our vote along with the vote of the local government there, without regard to a legal standard or something that we can administer in a more or less neutral way. So what are we supposed to do in that situation? I agree it's a challenging context, Your Honor, but the court has, in two unpublished opinions, addressed this, the Living Water case and the Dallara case. And in both those cases, the court adopted a standard of whether or not a religious institution is effectively barred from using its property in which it has a property interest for the exercise of its religious rights. And, Your Honor, we believe that there is a genuine issue of disputed fact on this point. There's no question that Livingston Christian Schools has been barred from practicing its religious mission at the Nazarene Church. There's no question about that whatsoever. I thought the argument was that a substantial burden had been imposed on LCS by the board's vote. Yes, Your Honor. And you're saying that that substantial burden is sufficient, that it constitutes, in effect, a total bar. I'm saying, Your Honor, that because the denial of the permit in fact barred Livingston Christian Schools from setting up and exercising its religious rights on this property, that constitutes a substantial burden under the standard in the Dallara case and the standard in Living Water. That's the standard that the court applied. Neither of those cases focused on whether there was a reasonable alternative. And other circuits have said if there's a reasonable alternative, then there's no substantial burden, right? Well, here there is no reasonable alternative. But the school is operating right now in temporary quarters, granted. But they are operating. They're actually discharging their religious function. I'm aware that you say that this is not tenable and that if they are forced to continue in this year-to-year lease, they can't market that there are sufficient restrictions that eventually it will basically kill the church and they will be denied. But right now, they are operating. Right, and I would submit that the standard can't be that if you have a stopgap measure, you're not protected by this statute. Yes, the school was able to identify a stopgap measure, an inadequate one, one that still results in a drop-off in enrollment. They've had a continued drop-off enrollment, but it doesn't allow them to serve their mission, which again, if you look at their articles of incorporation, which is a little unusual, they have a specific religious mission directed at serving Livingston County. That's what they exist for from a record evidence. That's within Livingston County, right, the old location. It is. And it could have, and it now, the LCS bought the Pickney property, right? Right. It owns it, and it could, if it hadn't leased it out to the LACWA, it could be back there, couldn't it? But what I would submit to you, Judge Gilman, is that because this case is here on summary judgment, there is a genuine dispute of survival of the school is threatened as to whether or not the Pickney location would be a viable location for the school. Livingston Christian School submitted record evidence in various ways to establish that Pickney was not viable. The board of the school had voted that for a reason. There's a history of dropping enrollment at the school. Its location is far from where the students are coming from. So there's ample evidence. About 19 minutes I calculated between the church location and the Pickney location. Do you dispute that? Well, I think there are, I'm sure if it's like my school, it depends on the time of day, exactly. But I think also, Your Honor, there's no question that the board no longer able to function at that location for fiscal reasons. They have a certain amount of revenue that needed to come in to meet their financial commitments. It wasn't working out, which is why they looked for alternative locations. Doesn't the law say you're supposed to look at the current situation, not speculate on the future? I mean, it wasn't as if their enrollment the last year at Pickney was only half of what it was the year before. And we agree with that, Your Honor. There's some language in Living Water that talks about, look, we don't look out five years or ten years or twenty years. But we're not making a speculative argument here. Our argument is that right away they're not able to exercise their leasehold interest at the church in Brighton, number one. So they're Number two, they've had to move out of the county entirely, the county that they're named after, the county that they serve. And number three, that they immediately experienced this threat to their survival. Attendance is dropping off, fewer students coming to the school. These are all present issues for them that we do believe constitute a substantial burden under this court's law. If you look at other circuits, and I recognize there isn't really a published opinion in this circuit that directly controls here, but if you look, for example, to the Second Circuit's decision. I apologize. I'll use my rebuttal time for that purpose. Thank you, Your Honor. Good morning. May it please the Court, Joseph Seward on behalf of Genoa Township, not Genoa Township. And with me is the Township Manager, Mike Arcanal. I will try to get right to the heart of the issues here. You know, RLUIPA and the Act says a land use regulation has to cause a substantial burden on the school. No Act by Genoa Township caused the declining enrollment that it has in Pinckney. There was no action by Genoa whatsoever that had that effect. Now what's interesting, though, if you take a look at how this case got before you, the complaint was, and the affidavit of Scott Panning was, that they needed to move to a bigger facility because of an expanding enrollment. And then when we were able to question that, now they come with a second affidavit acknowledging it's a declining enrollment. They have not ever explained why this case came before the court and said we had expanding enrollment. And now say we had... What connection did they say their enrollment was expanding and that is the reason that they want to do the project in your township? It's in their complaint and in their motion for temporary restraining order where they attach the affidavit of Scott Panning saying we need to get out of this small building because our enrollment is increasing. And our response showed that that wasn't true. But keep in mind, it wasn't... That enrollment wasn't declining because of a land use regulation of Genoa Township. But your counsel's or your governing body's vote was based on what kind of vote? Well, there was a number... Do we know what it's based on? It was a 4-3 vote and what it was based upon, and keep in mind this when I say it, the applicant here is the Church of the Nazarene. They call it the Naz, so I may refer to it as the Naz. But the applicant was the Naz. So one of the reasons is that over the years they were given special use permit, and there's two important aspects to that. One, they gave the Naz a special use permit, a religious entity, so there aren't hints of religious animus. But the Naz did not follow through with a number of things. Yes, there's a big building with a skate park in there. Hours of operation. They said, because this is right in the heart of... Did the church give this information of prior compliance or non-compliance with the special use permit when they voted to approve the special use permit? Yes, they did, and I want to point a couple things out. First of all, there was four, can't count, there were four Planning Commission meetings, which is unusual for something like this. And all of them, there was opposition to it. So yes, absolutely, this was aware of the Planning Commission, but the Planning Commission doesn't approve the special use permit. It makes a recommendation... I stand by that. Okay. So why didn't the town follow the Planning Commission's recommendation? Because the history with the Naz, non-compliance, and keep in mind this, I think this is really important, there's a question of credibility here. The Naz, or the LCS, went forward and started building the facade and so forth without ever seeking a permit. And then when they were called out upon it, then said, okay, yes, we need a special use permit. They, trusting, because the applicant is the Naz, so the Naz is the one who's making the promises. You can't count on the Naz following through. Okay, so the first vote by the board offered no reasons for the denial, not withstanding the Planning Committee's recommendation. It was only the second vote where we got the reasons. What necessitated the second vote by the board? Your Honor, I think it was probably a lack of direction from the township attorney that there had to be a specific vote denying it as opposed to not just denying the approval. And since we're talking about summary judgment, isn't it reasonable to think that perhaps there was some kind of religious animus and then later on justification for an action which might support the appellant's position that maybe we need to have a try or effect look at all of the issues and all of the facts related to this? We don't get to that step until they show that there's been a substantial burden placed upon it by Genoa Township. And Genoa Township hasn't placed that burden on it. Keep in mind- Well, they say now that there's a burden because if they are not allowed, if they're not granted relief, then LSC basically can't exist. I mean, that its days are numbered and that that provides a substantial burden. I understand that argument. I have two responses, two arguments to that. First of all, does RLUIPA provide an advantage, a benefit not afforded any other applicant because its business model doesn't meet the current needs? I submit not. The second argument to that is, where is the proof? Because this was a motion for summary judgment. This is a Rule 56 motion. There's no admissible evidence at all of why the declining enrollment before the application to Genoa Township nor after. We have an affidavit of Scott Panning saying that people did not re-up or they've told them, but that's hearsay. Where are the people to come forward and say, I choose not to go to a tuition-based school because of its location? There has never been, in this case whatsoever, any evidence in the discovery. Nobody identified in witness lists, no depositions, and no affidavits of one person saying they chose not to go there because of its location. Counsel, could I ask, have you done any work on why this statute was passed by Congress? That is to say, what groups were behind the passage of this act and why? Was there some instance of some kind that prompted? Because Congress often comes along and there's a problem and they say, well, we don't know exactly what kind of standard to put down and we'll just let the federal courts figure it out. Here, there is no, I mean, it's totally standardless, basically, except in a very broad sense. What caused this statute to get passed? Do you know? Well, I read the congressional record, the reports, the pages, and it talked about, as Brother Counsel said, that government sometimes would use one reason for denying it, but it was really because of the religious nature of it. And the backgrounds were taxable property, was it the views of the religion, or its practices, or the people that... Was it focused on discrimination against a particular religion or several particular religions, which could very well be the case. I mean, maybe neighborhoods that don't want a temple or a Muslim church or whatever. Is that the background of the statute or is it something else? I would say it is that plus, whether it's a particular religious belief, religious practice, who it may attract. Also, I think there was some mention about it diminishes the taxable property values for the municipal entity. There's an old statute before this called RFRA or something like that and the Supreme Court declared it unconstitutional and then Congress came back with rule. Is that the background? That's correct. And they also made mention of the Supreme Court standard of substantial burden under the First Amendment, you know, the Establishment Clause. So if the congressional record is, you know, the background, it does give some hint. And that's important because when you look at LCS, none of those factors apply. There's nothing controversial about the school. It's similar to what the Naz, the people, the beliefs that the Church of the Nazarene has. What you're saying is if the background of the statute is based pretty much on discrimination at the local level against one or more particular religions, that doesn't exist in your case, right? That's what you're saying. Yeah, I'm saying it doesn't exist because we gave the Naz, the applicant, all the special uses. So there's no hints here that we're anti-religion. And when you look at the traffic studies, because they make a big mention of the traffic studies, their own boss engineering, the way they handle K-12 is they're relying upon staff, the pick-up, and they say that's imperative. And they say that our consultants agreed with that. Our consultants said if they actually do that. But keep in mind this, those promises are not by the Naz. The Naz is not committing to doing that. The applicant is the Naz. LCS never made an application that said this is how we were to do this. They haven't shown that we have any recourse against LCS should the special use. And here's the other thing. The substantial burden. Can they practice their religious beliefs? Yes, they can. Has it been impaired? Not because of the actions of Genoa Township. First of all, it's questionable whether it was negotiating with the Archdiocese of Lansing. The Archdiocese said we heard you're planning on going to the Naz. They write back in an email, we're not being disingenuous about using the Pinckney position. We just wanted a fallback. So they told the Archdiocese that if we couldn't work out a financial deal, then we would have to move, but we want to stay there. And then after knowing that the special use permit was not going to be allowed, they leased the property that they said was sufficient. So it's not a governmental regulation imposed burden. It's a self-imposed burden. So if there's any other questions, if not, thank you so much. Counsel, you have your three minutes for rebuttal. Thank you, Your Honor. Judge Mark, to answer your question about the history of the RLUIPA statute, Senators Kennedy and Hatch, who sponsored the statute, were concerned about several things. It was not just whether a particular sect was being discriminated against. It was also about whether religion in general might be discriminated against by secular interests. So there were a number of different things they were going after. We don't have that in this case. Well, actually, we do think there is what Judge Posner called in the St. Constantine's case a whiff of animus, which is indicated by the irregular history here, the consensus among the experts in the planning commission that was rejected by the board. And also, if you look at the point you made, Judge Gilman, about the skate park and other things going on at the school, it's very interesting because there were several secular activities taking place at the school. There's a driving school that uses the space that neighbors complained about a lot. There's a skateboard park that's complained about a lot. These things, some of them might have been in violation of special use permits previously issued to the church. But the record shows that there was no enforcement with respect to these secular activities at the school. In fact, the record shows that the township is prepared to allow the secular driving school to continue to operate on the site, even though the township contended it was in violation of a prior permit. There were things kind of piled up where there were complaints about what was going on at the Nazarene facility there. And the vote in the council was that four to three or whatever it was, three to two, that there's enough going on there. We don't want any more activities going on because the neighbors and our constituents don't like it. That was kind of what happened. That is what they claimed after the fact when they got around to a second vote in creating a post hoc rationalization for what they did. But we know that they have consistently tolerated secular activities that neighbors have complained about. But in this instance, they will not allow the religious school at the location. So we do see a whiff of bad. Their answer to that is, well, this is just one more thing, the straw that breaks the camel's back, so to speak. That may be. But the question before the court I would submit on summary judgment is, is there a genuine dispute of fact that goes to the question of substantial burden? And there clearly is. Judge Gilman, you spoke about the Pinckney property. There is a dispute over whether that's a viable location. We've put in evidence that it is not. There are two rather lengthy declarations. There's deposition testimony from the current occupant of the school. The district court really disregarded that disputed evidence entirely and simply concluded as the trier of fact, in effect, that they could have just gone to Pinckney and that would be just fine. Maybe yes, maybe no, but it's absolutely a contested issue in this case. And the school is entitled to go back and try that issue out to its conclusion. I would also highlight this question about whether enrollment was going up or was going down as a bit of a red herring. Enrollment clearly has been going down, and that's in the record. There was... I thought you were wanting to expand by going up. Well, not quite. There was a... When they were doing the TRO on a very short-term basis at the beginning of this proceeding, in an early declaration by the treasurer, he said the growing enrollment at the school is an issue. What he was referring to, rather inartfully, was that when they moved to the Nazarene Church, they did expect to have a spike in enrollment. And I think it's pretty clear from the record that they were going to have a spike in enrollment when they moved to the Nazarene Church. In fact, that was really the point, was to be in a more populous location. But there was no claim that they had actually experienced growing enrollment up to that point, and they clearly didn't. And I think that's very evident from other evidence in the record. Okay. Your light has been on for some time. Is there another question from you? All right. Thank you, sir. Thank you, Your Honor.